CLARK (REED v.). See Case No. 11,643.

---

## Case No. 2,833.

### CLARK et al. v. SCOTT.

[9 Blatchf. 301; 5 Fish. Pat. Cas. 245; 2 O. G. 4; Merw. Pat. Inv. 129.] [1]

Circuit Court, S. D. New York. Jan. 16, 1872.

PATENTS — "HAND-MIRRORS" — VALIDITY — INFRINGEMENT—CONSTRUCTION OF ASSIGNMENT.

1. The letters patent granted to W. U. Dudley and Lawrence W. Clark, as assignees of W. U. Dudley, the inventor, July 27th, 1869, for an "improved hand-mirror," are valid.

2. The claim of said patent, namely, "A hand or portable-toilet mirror, constructed, substantially as described, of a base-piece, P, with its handle-extension piece or stiffener, C, glass, A, and outer back and handle, D, made of any suitable composition or cement, substantially as specified," covers a hand-mirror made of a cement applied in a plastic state and afterwards hardened, and which has in it two flat wires or strengtheners, made of metal, embedded in the cement and concealed from view, and running, from the body of the mirror part, through the neck and into the handle, and serving to stiffen and strengthen the article, particularly at the junction of the handle with the body.

[Cited in Florence Manuf'g Co. v. Boston Diatite Co., Case No. 4,882.]

3. The brush described in letters patent granted to J. S. Parsons and George A. Scott, as assignees of Alanson C. Estabrook, June 19th, 1866, for an "improved brush," namely, a brush in which the bristles, inserted through a perforated plate, are embedded and held firmly in a suitable cement, which cement, at the same time, in combination with the plate, and an extension of the plate into the handle, forms the back and handle of the brush, is not,

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. Merw. Pat. Inv. 129, contains only a partial report.]

as a structure, substantially the same thing as the hand-mirror covered by the patent to Dudley and Clark. Such hand-mirror, as an article of manufacture, was patentable, as distinguished from a brush, even though the backs and handles of the two were made in the same way, there having been a point of utility and adaptability, in applying the non-warping property of the back and handle to rendering the glass of the mirror free from liability to fracture, which constituted sufficient invention to support a patent for a mirror, even though a brush with a like back and handle had existed before.

4. Dudley, at the time he applied, in August, 1866, for a patent for the hand-mirror, also applied, as inventor, for a patent for an "improvement in brushes," with this claim, namely, "A brush, in which the bristles are inserted through a perforated plate or holder, embedded in a composition or cement of any suitable substance, as described, which cement shall, in combination with a base-piece and stiffener of metal, or other material, form the back and handle of the brush, substantially as specified." Both of the applications were rejected. In December, 1866, he assigned to a corporation, who were the real defendants in this suit, all his inventions "in the manufacture of composition brush backs and handles, with suitable strengtheners," and all applications for a patent "therefor," and certain apparatus used by him "in said manufacture," with all his useful information "for making and selling said composition brush backs and handles," "meaning hereby to transfer" all his rights "to the manufacture and sale of said composition brush backs and handles." The applications for both of the patents were pending at that time: Held, that the assignment was one only of the invention of the brush, and of the application for the brush patent, and did not carry a right to the invention of the hand-mirror.

5. Dudley, from August, 1866, until May, 1869, did nothing further towards obtaining a patent for the hand-mirror. The said corporation put into the market, in the fall of 1867, hand-mirrors made in accordance with Dudley's invention. Dudley did not know that fact. His co-patentee, Clark, obtained no interest in the invention until April, 1869: Held, that these facts constituted no objection to the validity of the patent.

[Cited in Goodyear Dental Vulcanite Co. v. Willis, Case No. 5,603.]

[In equity. Bill by Thomas Clark, Jr., trustee of W. U. Dudley and Lawrence W. Clark, and the said W. U. Dudley and said Lawrence W. Clark, against George A. Scott, agent of the Florence Manufacturing Company, to enjoin infringement of letters patent No. 92,942, granted to said Dudley and L. W. Clark, and for an accounting.]

Frederic H. Betts, for plaintiffs.
Daniel W. Bond, for defendant.

BLATCHFORD, District Judge. This suit is founded on letters patent granted to W. U. Dudley and Lawrence W. Clark, as assignees of W. U. Dudley, the inventor, July 27th, 1869, for an "improved hand-mirror." The specification, signed by the inventor, says: "My improvement relates to that description of hand-mirrors for toilet use and other purposes, in which the frame that holds the glass is elongated at one end, to form a handle, or it may be similarly shaped at both ends. The usual mode of constructing such mirrors is to mount the glass in a solid frame or thin block of wood, either naturally of ornamental character, or afterwards made so by veneering, cut or shaped so as to be of similar contour to the glass, and with a projecting end formed to constitute a handle. Apart from the expense of hand-mirrors so constructed, where a very ornamental appearance is required, there is not only a general want of strength, especially at the neck or junction of the handle with the body, but a great liability to fracture of the glass by the twisting or warping of the wood of which the frame or holder is made. This latter defect is not merely at first, or peculiar to any greenness of the wood or newness of the article, when fracture of the glass from such causes frequently occurs, but is induced at any time by sudden and violent changes in the temperature of the atmosphere, exposure to damp and extreme heat. My improvement obviates such defect, being non-absorbent as regards damp, and free from any liability to warp, at the same time combining beauty with strength at a comparatively trifling cost; and the nature of my invention consists in mounting the glass on a base piece, of wood or other material, having a stiffening extension running into the handle, and embedding the whole in a composition or cement of suitable description, that, on hardening, forms the back, edges and outside handle of the mirror." The manner of constructing the article is then described, with references to the drawings: "A, is the glass; B, a base-piece, of wood or other suitable material, preferably of similar contour to the glass which is designed to be mounted on it, but elongated at one end, which extension, with a strip of metal or other stout material at its back, forms a handle-stiffener, C, to the mirror. This base-piece, with its handle extension or stiffener, C, is then laid in a mould or on a block, face downward, with or without the glass, A, in its place, and a composition or cement of any suitable plastic material, applied in sufficient quantity to cover the back and extend beyond the edges of the base-piece, B, and so as to surround the handle-stiffener or end extension of the latter, when an upper mould, of suitable configuration, and having its interior embellished with any ornamental device or devices, is pressed down upon the cement, which, when hard or dry, on removing the upper mould and lifting the article from the lower one, constitutes a smooth or finished, and, it may be, highly ornamental outer back and handle, D, impervious to damp, exempt from warping, with its consequent liability of fracturing the glass, and preservative of the wooden or other base-piece, which may be of a cheap and rough construction; and that, by its end extension, with strengthening strip at its back, gives not only a general stability to the whole article, but especially stiffens the handle at its junction with the back or body, where it is naturally weakest or most liable

to break. The under mould or block may also be embellished with any ornamental device. The glass may either be laid on a cushion of the lower mould, so as to be embedded at its edges, simultaneously with the forming of the outer back and handle, in the plastic composition or cement, or it may be afterwards inserted and restrained to its place on the base-piece, either by an ornamental bead around the edges of the glass, and formed of the same composition or cement of which the outer handle and back are made, or of different material afterwards run around and applied thereto. As I do not desire to confine myself to any particular composition or cement of which to form the outer handle and back, but design to use any plastic substance or compound of suitable character, it will here suffice to state, that a mixture in equal parts, more or less, of paint, sifted sawdust and shellac, forms a very desirable composition for the purpose, and one which readily admits of the color being varied to suit different tastes or demands." The claim is in these words: "I claim, as a new article of manufacture, a hand or portable-toilet mirror, constructed, substantially as described, of a base-piece, B, with its handle-extension piece or stiffener, C, glass, A, and outer back and handle, D, made of any suitable composition or cement, substantially as specified."

The hand-mirror of the defendant is made of a cement applied in a plastic state, and afterwards hardened, and embedded in the cement and concealed from view are two flat wires or strengtheners, made of metal, and running from the body of the mirror part through the neck and into the handle, and serving to stiffen and strengthen the article, particularly at the junction of the handle with the body.

The defendant insists that the claim of the patent must be construed as being for a hand-mirror made by means of a glass mounted on a piece of wood shaped for the glass, and a handle, the handle being strengthened by a strip of iron, and the whole covered with a cement; that the defendant's mirror is a hand-mirror with a composition back, the composition being strengthened by the two wires; that the only office of the wires is to give strength to the back, and they are not, in any sense, the base-pieces or foundation on which the cement is pressed; that, in the defendant's mirror, the composition is the base or foundation, while, in the patent, the wood is the base or foundation; that the defendant's mirror has nothing corresponding to the base-piece, B, of the patent, the two wires corresponding only to the stiffener, C, of the patent; that the base-piece, B, is an essential part of the article claimed, and is claimed in the patent as such part; and that, therefore, the defendant's mirror does not infringe the patent. But, the patent is not fairly susceptible of this limited construc-

tion. According to the description, the glass is to be mounted on a base-piece of any suitable material, which base-piece is, at its end, to be elongated or extended through the neck and into the handle, the extension being made sufficiently strong not only to give general stability to the whole article, but especially to stiffen the handle at its junction with the body, and the whole being embedded in a suitable cement, applied in a plastic form, and which, when hardened, forms the back, edges and outside handle of the mirror. The defendant's wires act as a base-piece or support for the glass, and the wires extend through the neck and into the handle as stiffeners, and there is an outer back and handle of cement. There can be no doubt that the defendant's mirror is, in its construction, substantially the same as the patented mirror.

Various defences are set up in attack on the validity of the patent. To understand them, it will be necessary to give a history of certain events. The application for the patent sued on was filed on the 6th of August, 1866, the oath to the specification having been made by W. U. Dudley, on the 1st of August, 1866. The specification presented was in the same language as that attached to the patent. The application was rejected on the 23d of August, 1866, as being anticipated by a patent granted to Alanson C. Estabrook, June 19th, 1866. Nothing further was done towards procuring the patent until the 1st of May, 1869, when an argument in favor of granting the patent, notwithstanding the Estabrook patent, was sent to the patent office by the attorneys for Dudley. The office, on the 8th of May, 1869, decided to grant the patent; but, through accident, it was not issued till the 27th of July, 1869.

On the 6th of August, 1866, Dudley filed an application for a patent for an "improvement in brushes." the oath to the specification being made by him August 1st, 1866. The specification said: "In the manufacture of toilet and other brushes, it is customary to insert the bristles in a block or stock, which, by its extension, may be made to form the frame or handle of the brush, and afterwards to cover by veneer the unfinished and usually perforated and wired back that holds the bristles. This is a slow and expensive process, and the article, when completed, is but slightly ornamented by the veneer or outer covering to the back. My present invention constitutes a great improvement upon such articles, combining strength with a high degree of ornament, at a cheap cost of manufacture; and the nature of it consists in inserting the bristles through a perforated plate, which is united, by cement, or otherwise, to a back frame of wood, having attached to it a strip of metal or other stiffening material, that runs into the handle of the brush, and that, together

with the back frame, is covered by any suit-able composition or cement, which, after be-ing moulded, hardens, and forms a compact mass, that constitutes the stock and handle of the brush." The mode of constructing the brush is then described, with references to drawings. A suitably perforated plate or holder, of, say, corresponding configuration to the brushing surface, is taken, and in it are inserted the hairs or bristles, which may be bound and held therein by the usual wire-threading at the back, or otherwise. This perforated plate holding the bristles is after-wards connected, by cement, or otherwise, with a frame and handle constructed as fol-lows: A wooden back, or other suitable base-piece, mainly of similar contour to the per-forated plate, but longer, so as to form an extension into the handle of the brush, and having lashed to its back and handle end a strip of metal, or other stiffening material, is inserted in a mould, the form of which embodies the frame or body and handle of the brush, and may include any fanciful de-sign or ornament to the back and handle. In the mould is put any suitable composition or cement, that, after receiving the impres-sion of the mould, hardens into a compact mass, such, for instance as that used in pho-tographic picture frames or cases, including the many well-known combinations of coal tar admixed with various materials, or com-position or cement having shellac as a basis. The base-piece, with its stiffener, is so em-bedded and pressed in this composition, as that it is not only backed by it, and the com-position made to project beyond the edges thereof, so as to form a border to the edges of the bristle holder, but the handle end of said base-piece is entirely covered by said composition or cement, which constitutes the outside frame, back or body, and exterior part of the handle of the brush. There is a drawing representing the base-piece with its stiffener before being coated with the ce-ment; and another drawing representing the same after being coated, and, when ready to receive the bristle holder, which, being unit-ed by cement with the base-piece, forms one with it. The stiffening strip serves to strengthen the brush where it is naturally weakest, namely at the junction of the han-dle with the frame or body, and prevents the cement or composition, which, conjointly with the base-piece and stiffener, forms the back and handle, from fracturing at such part, to which it otherwise would be liable. The claim applied for was in these words: "I claim, as a new article of manufacture, a brush constructed substantially as described, that is to say, a brush in which the bristles are inserted through a perforated plate or holder, embedded in a composition or ce-ment of any suitable substance, as described, which cement shall, in combination with a base-piece and stiffener of metal, or other material, form the back and handle of the brush, substantially as specified." This ap-

plication was rejected August 23d, 1866, as being anticipated by the said patent granted to Estabrook June 19th, 1866. On the 15th of December, 1866, W. U. Dudley and his father executed to the Florence Manufac-turing Company the following assignment: "Be it known, that we, W. J. Dudley and W. U. Dudley, brush makers, in the city of New York, under the firm of W. J. Dudley and Son, in consideration of three thousand dollars, to us paid by the Florence Manu-facturing Company, of Florence, Massachu-setts, the receipt whereof is acknowledged, do hereby bargain, sell, assign, convey and transfer unto said company, its successors and assigns, all the inventions and improve-ments in the manufacture of composition brush backs and handles, with suitable strengtheners, made, contemplated, or here-after to be made, by us or by either of us; also, all applications for a patent now pend-ing or hereafter to be made therefor, by us or either of us; also, one press, three dies and one heater, used by us in said manufac-ture, with all our useful information for mak-ing and selling said composition brush backs and handles, in the best way known to us or either of us, meaning hereby to transfer to said company all our rights to the manu-facture and sale of said composition brush backs and handles, and all our implements therefor, and hereby agreeing not to con-tinue the same ourselves, nor to authorize or instruct others so to do; and we cove-nant that we have good and exclusive right to convey and transfer the aforesaid inven-tion and property, and that no other person has any right or interest therein, and that we, and each of us, will, at the request and sole expense of said company, its successors and assigns, do all further acts and things necessary and proper to secure any patent or patents, for said inventions and improve-ments, which patents, if allowed, are to be granted to said company for its exclusive benefit."

Before proceeding further it is proper to refer to what is before spoken of as the patent granted to Estabrook June 19th, 1866. It was granted to J. S. Parsons and George A. Scott, as assignees of Estabrook, as invent-or, for an "improved brush." It describes a brush in which the bristles, inserted through a perforated plate, are embedded and held firmly in a suitable cement, which cement, at the same time, in combination with the plate, and an extension of the plate into the han-dle, forms the back and handle of the brush. As a structure, such brush was not substan-tially the same thing as the hand-mirror of Dudley. The patent office so decided, neces-sarily, in granting the patent for Dudley's mirror, and the decision was proper. The re-moval from Estabrook's brush, of the plate and bristles, removes also the extension of the plate, which forms the strengthening piece in the handle, and, if a mirror were in-serted, in lieu of the plate and bristles, the

article would be without a strengthening piece. The cutting off of the bristles would leave no cavity for the glass. The specifications of the Parsons and Scott patent give no suggestion as to how to construct a mirror like Dudley's.

The hand-mirrors sold by the defendant are made by the Florence Manufacturing Company, and they are the real defendants in this suit. The defendant contends, that the company, by the assignment of December 15th, 1866, acquired a right to use the invention covered by the patent sued on. The ground taken is, that the entire invention embodied in that patent is embraced in Dudley's "improvements in the manufacture of composition brush backs and handles, with suitable strengtheners," and in his application for a patent for such improvements; or, in other words, that, as the company have the right to make such brush backs and handles as are described in the application of Dudley, filed August 6th, 1866, for a patent for an "improvement in brushes," they have also the right to make and sell such mirrors as have been sold by the defendant, on the ground that the assignment of December 15th, 1866, embraces the latter right as well as the former right. It is claimed, on the part of the defendant, that the only invention involved in making the mirror covered by the Dudley patent, is in the manner in which the back and handle are made; that the back and handle, when made, are equally ready and suitable for the insertion, in the recess, of a plate with brush bristles or of a mirror glass; that there is no invention in inserting a mirror glass in the recess, or in removing the plate with brush bristles from the recess and inserting in its place a mirror glass; and that the back and handle, with a mirror glass inserted in the recess, cannot properly be treated as a distinct article of manufacture from the article of manufacture consisting of the same back and handle with a plate with brush bristles inserted in the same recess. The sum and substance of these propositions is, that Dudley ought to have applied for and obtained a patent for the back and handle, consisting of the base-piece, handle-extension piece or stiffener, and cement outer back and handle, with a recess, such recess admitting of the insertion in it of a mirror glass, or of a plate with brush bristles, or of anything else; and that he ought not to have covered by his patent the back and handle with the mirror glass in the recess. If such back and handle with the recess had clearly existed before the invention of Dudley, the question as to whether he could insert a mirror glass in the recess, and claim a patent for the article thus formed, would arise; or, if such back and handle, with a plate with brush bristles in the recess, had clearly existed before the invention of Dudley, the question as to whether he could remove the plate with brush bristles and insert in its stead a mirror glass, and claim

a patent for the article thus formed, would arise. But no such questions arise on this branch of the case. And, if Dudley had patented the back and handle, with a recess unfilled, and had then conveyed to the Florence Manufacturing Company the exclusive right to the invention so far as it could be applied to making brushes, such conveyance would not have carried any right to apply the invention to the making of mirrors or of anything except brushes.

What was the actual state of things when the assignment to the Florence Manufacturing Company was made? Dudley had not only invented the back and handle, consisting of the base-piece, handle-extension piece or stiffener, and cement outer back and handle, with a recess, but had demonstrated its applicability to the making not only of brushes but of hand-mirrors. He had applied for a patent for a brush, embodying such back and handle, and had claimed such brush as his invention. He had also applied for a separate patent for a hand-mirror, embodying such back and handle, and had claimed such hand-mirror as his invention. It is stated, in the specification of the mirror patent, and is manifest, and the evidence shows, that, where the glass in a hand-mirror is mounted in a wooden frame, it is liable to be broken by the warping of the wood; and that, in the mirror of Dudley, there is no liability to warp in the frame, and no danger of the fracture of the glass from such cause. It is also shown, that this point of advantage in the mirror does not exist in the brush. Consequently, there is a special function exerted by the mirror back, in protecting the glass from fracture through the warping of the frame, which is not exerted by the brush back. A wooden brush back and handle may be warped and disfigured to the eye, yet its usefulness not be materially impaired, while an equal extent of warping in a wooden mirror back and handle would fracture the glass and render the mirror useless. The applications of Dudley were both of them rejected in August, 1866. Less than four months afterwards, the Florence Manufacturing Company, which was at the time making cement brushes but not cement hand-mirrors, applied to the Dudleys and paid them the sum of $3,000 for the assignment in question. It is limited, on its face, to "brush backs and handles." It only conveys improvements in the manufacture of "brush backs and handles," and applications for a patent "therefor," and information for making and selling "said brush backs and handles," and states that the assignors mean to transfer to the company all their rights to the manufacture and sale of said "brush backs and handles," and agree not to continue the same themselves, or to authorize or instruct others so to do. At that time, the application by Dudley for the mirror patent, as well as his application for the brush patent, were both of them pending. Subse-

quently, the Florence Manufacturing Company applied to Dudley to execute a paper having reference to mirrors, but he declined to do so. I am entirely satisfied, from the evidence, and the tenor of the assignment made by the Dudleys, that it was in fact, and was intended at the time as, an assignment only of the invention of the brush and of the application for the brush patent.

The mirror, as an article of manufacture, was, in my judgment, patentable, as contradistinguished from the brush, even though the backs and handles of the two were made in the same way. There was, as before explained, a point of utility and adaptability in applying the nonwarping property of the back and handle to rendering the glass of the mirror free from liability to fracture, which constituted sufficient invention to support a patent for the mirror, even though a brush with a like back and handle had existed before. Whether, if the mirror had existed before, a patent for a brush with a like back and handle could be sustained, and whether, the Dudley mirror being patented, a patent for the Dudley brush could be sustained, are questions which do not here arise. The Dudley mirror has been patented. The Dudley brush has not been patented.

It is contended, by the defendants, that the neglect of Dudley to prosecute further his application, after it had been rejected, until a period of two years and eight months had elapsed, constitutes an abandonment of the application, or an abandonment of the intention further to prosecute the application. It is not alleged in the answer, that this constituted an abandonment of the invention to the public. The answer only avers, that, after the rejection of the application, for want of novelty in the invention, the plaintiffs "abandoned said application for over two years, well knowing that said Florence Manufacturing Company were making and using this pretended invention, and that the patent afterwards granted was obtained upon false and fraudulent representations by the plaintiffs, or some of them, made to the commissioner of patents, and is wholly void in law." The answer does not set up any abandonment of the invention to the public, nor does it set up the defence that the invention was in public use or on sale, with the consent or allowance of Dudley, for more than two years prior to his application for a patent for it. The averment, in the averment cited, is entirely frivolous. The abandonment of an application amounts to nothing, unless it is in such wise as to become an abandonment of the invention to the public; and the allegations as to false and fraudulent representations are too general to raise any triable issue. But the answer does not even aver an abandonment of the application. It avers that the plaintiffs abandoned the application for over two years. It does not set up a conclusive or final abandonment. It implies that the abandonment was only temporary and was made with the intention of resuming the application. The proofs, however, show, that there was no abandonment of the application, or of the invention, and no obtaining of the patent on false or fraudulent representations. Hand-mirrors made by the Florence Manufacturing Company in accordance with Dudley's invention, were first put into the market in the fall of 1867, which was less than two years prior to the time when Dudley, in May, 1869, again pressed his application. Nor is there any evidence that Dudley had any knowledge, prior to the granting of the patent, that any mirrors made in accordance with his invention had been made by the Florence Manufacturing Company; and, although his co-patentee, Clark, may have known of the making of such mirrors by the company, Clark obtained no interest in the invention until April 30th, 1869.

The only other defence set up in the answer is, that Dudley was not the first inventor of what is patented. It is not set up that he was not its inventor, or that he stole it from another. It is not set up that one Dane invented it, and that Dudley stole it from Dane. That defence was urged at the hearing; but the answer does not suggest it, nor does the evidence sustain it. The defence in the answer is, that the same thing was, before Dudley's invention, known to and used by the Florence Manufacturing Company, A. C. Estabrook, Isaac S. Parsons, and William Gerhard, at Florence, Massachusetts.

Without discussing the details of the evidence, which is quite voluminous, it is sufficient to say, that Dudley fully conceived and described his invention in May, 1865; that he at that time, or a month later, ordered the construction of dies with which to make the mirrors; that the dies were cast in the summer of 1865, and proofs taken from them in plaster of paris by November, 1865; that, prior to November 27th, 1865, Dudley took the dies into his possession, and removed them from Newark, New Jersey, where they were made, to the city of New York; and that, soon afterwards, and during the month of November, he exhibited some backs made in the dies, which backs were complete, and constructed entirely in accordance with the description in the patent. On the 12th of March, 1866, he employed attorneys to procure the patent. He made some samples of finished mirrors in accordance with the invention, but he did not prosecute the business, for want of means. The only date in this series which the defendant undertakes to controvert with any show of reliance, is the date of the making of complete backs by Dudley. That date is claimed to have been not in November, 1865, but in January or February, 1866. Then the defendant undertakes to carry back the existence of the same invention at Florence, as made by Gerhard, Estabrook and himself, all or some of them,

to December, 1865. But the attempt fails. There was no such invention in the Parsons and Scott patent of June 19th, 1866, taken out on Estabrook's brush, as has been already shown. There was no suggestion of a mirror in connection with the first die made at Florence, which was a die for the brush of the Parsons and Scott patent; and there is no satisfactory evidence that the invention of a mirror like Dudley's was made at Florence earlier than the latter part of February, 1866, if even as early. The burden is on the defendant to make out clearly an anticipation of Dudley's invention. The evidence fails to do this, and there must be a decree for the plaintiffs, for a perpetual injunction, and an account of profits, with costs.

[NOTE. For another case involving this patent, see Florence Manuf'g Co. v. Boston Diatite Co., Case No. 4,882.]